UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS.: 23-80383-CV-RLR
21-80101-CR-RLR

LAZARO RAMIREZ-ALVARADO,

        Movant,

vs.

UNITED STATES OF AMERICA,

        Respondent.

_____/

**REPORT AND RECOMMENDATION ON MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE [ECF No. 1]**

Lazaro Ramirez-Alvardo moves under 28 U.S.C. § 2255, to set aside his conviction and 60-month consecutive sentence on Count Five. ECF No. 1. Mr. Ramirez-Alvarado filed a memorandum in support of his Motion. ECF No. 3. The Government responded. ECF No. 6. Mr. Ramirez Alvarado filed a Reply. ECF No. 7. There is no need for an evidentiary hearing to resolve the issues raised by the parties. This matter is ripe for decision.

**PROCEDURAL HISTORY**

On December 6, 2021, Mr. Ramirez-Alvarado pled guilty to possession with intent to distribute cocaine (Count Four) and possession of a firearm in furtherance of a drug trafficking offense (Count Five). Cr. ECF No. 38.[1] As part of the plea

---

[1] "Cr. ECF No." refers to docket entries in criminal case number 21-CR-80101-RLR.

agreement, the Government dismissed three counts. ECF No. 6-4 ¶2. On February 23, 2022, Mr. Ramirez-Alvarado was sentenced to 41 months imprisonment on Count Four and 60 months to be served consecutively on Count Five. Cr. ECF No. 52. He was also ordered to forfeit two handguns and $895,000 in U.S. Currency. As a term of his plea agreement, he waived his right to appeal the sentence. ECF No. 6-4 ¶23. He did not file an appeal of the final judgment. He is currently incarcerated.

In his timely Motion for post-conviction relief, Mr. Ramirez-Alvarado now asserts his conviction and sentence on Count Five should be set aside on four grounds:

- Mr. Ramirez-Alvarado was not guilty of Count Five. (Ground 1)
- Trial counsel was constitutionally ineffective for advising him to plead guilty to Count Five because there was insufficient evidence. (Ground 2)
- Trial counsel was constitutionally ineffective for advising him to plead guilty because the Indictment failed to adequately allege crimes and Mr. Ramirez-Alvarado had viable defenses to Count Five. (Ground 3)
- Trial counsel was constitutionally ineffective because he failed to ensure that the Court complied with Rule 11's requirements that the Defendant understand the nature of the charges and that there was a factual basis for the plea. (Ground 4)

ECF No. 1. He does not challenge his conviction on Count Four.

For the following reasons, the Motion should be DENIED.

## LEGAL PRINCIPLES

*Section 2255*

Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. Thus, "the grounds for collateral attack in a final judgment pursuant to 28 U.S.C. § 2255, are limited." *Gayle v. United States*, Case No. 19-cv-62904-Bloom/Reid, 2020 WL 4339359, *3 (S.D. Fla. July 28, 2020). A prisoner is entitled to relief under Section 2255 if the court imposed a sentence that (1) violated the Constitution or the laws of the United States; (2) exceeded its jurisdiction; (3) was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). So, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam) (citing *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1998) (per curiam) (internal quotations omitted)). If a court determines it imposed a sentence in violation of Section 2255, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C.§ 2255(b). The movant, not the Government, bears the burden of establishing that vacatur of the conviction or sentence is required. *See Beeman v. United States*, 871 F.3d 1215, 1221-22 (11th Cir. 2017), *rehearing en banc denied by,*

3

*Beeman v. United States*, 899 F.3d 1218 (11th Cir. 2018), *cert. denied by*, *Beeman v. United States*, 139 S. Ct. 1168 (2019).

*Ineffective Assistance of Counsel*

A criminal defendant is entitled to the effective assistance of counsel before deciding whether to plead guilty. *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017). Where a movant challenges counsel's effectiveness, he must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the movant cannot meet one of *Strickland*'s prongs, the court need not address the other. *Id.* at 697.

As to the first *Strickland* prong, the "standard for counsel's performance is 'reasonableness under prevailing professional norms.' " *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*, 466 U.S. at 668). A movant must prove by a preponderance of the evidence that counsel's performance was objectively unreasonable. *Chandler*, 218 F.3d at 1313, 1315. The judiciary's scrutiny of counsel's performance is highly deferential. *Id.* at 1314. There is a strong presumption that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* "Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.' " *Id.* (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)).

To show deficient performance, the movant must demonstrate that "no competent counsel would have taken the action that his counsel did take." *Gordon v.*

4

*United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citation omitted). Counsel cannot be constitutionally deficient for failing to raise a meritless argument. *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

To show prejudice, the movant must establish that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. To set aside a plea based on ineffective assistance of counsel, a movant must show that he would not have pled guilty if counsel had provided competent representation.

Conclusory allegations of ineffective assistance are insufficient under *Strickland. See Boyd v. Comm's, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333-34 (11th Cir. 2012) (citations omitted).

*Guilty Plea*

Because a guilty plea is a waiver of substantial constitutional rights, it must be a voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970); *see United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citations omitted); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). To be knowing and voluntary, (1) the guilty plea must be free from coercion; (2) the defendant must have "real notice of the true nature of the charged crime;" and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citation

omitted); *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir. 1999) (citation omitted); *United States v. Brown*, 117 F.3d 471, 476 (11th Cir. 1997). "The defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements." *Brown,* 117 F.3d at 476, (citing *Gaddy v. Linahan*, 780 F.2d 935, 945 (11th Cir. 1986)).

Courts apply a "strong presumption" that statements made by a defendant during a change-of-plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) (citation omitted); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." (citation omitted)).

## PLEA AGREEMENT

Mr. Ramirez-Alvarado signed a 16-paragraph written plea agreement. ECF No. 6-4. During the plea colloquy, he swore that his attorney had reviewed the entire plea agreement with him and that he understood its terms. ECF No. 6-1 at 6-9. The plea agreement called for Mr. Ramirez-Alvarado to plead guilty to two counts, with the Government dismissing the remaining charges. ECF No. 6-4 ¶¶1, 2. The plea agreement listed the statutory maximum penalties, explained the possible immigration consequences, and noted that there would be forfeiture and restitution as part of the sentence. *Id.* ¶¶4-6, 11, 13-15. The Government agreed to recommend that the Sentencing Guidelines offense level be reduced to reflect Mr. Ramirez-Alvarado's acceptance of responsibility. *Id.* ¶9. Mr. Ramirez-Alvarado waived his

right to appeal any sentence within the Guideline range calculated by the sentencing judge. *Id.* ¶12. Finally, Mr. Ramirez-Alvarado agreed that the written plea agreement contained the entire agreement between him and the United States. *Id.* ¶16.

## FACTUAL PROFFER

Mr. Ramirez-Alvarado signed a written factual proffer admitting the following facts:

> 1. On March 11, 2021, the defendant met with a confidential source in West Palm Beach, Florida. During the meeting, the defendant sold the confidential source approximately 27.98 grams of cocaine. The meeting was audio and video recorded by the Drug Enforcement Administration ("DEA") and the cocaine tested positive by the DEA Southeast laboratory.
>
> 2. On June 22, 2021, the defendant met again with the confidential source. The meeting occurred at the same location in West Palm Beach, Florida. During the meeting, the confidential source purchased more cocaine from the defendant. The confidential source was also accompanied by an undercover police officer who was introduced to the defendant. The undercover officer purchased additional cocaine from the defendant. The total approximate amount of cocaine sold by the defendant to both individuals was 56.1 grams. The meeting was audio and video recorded by DEA and the cocaine tested positive by the DEA Southeast laboratory.
>
> 3. On June 25, 2021, the defendant met with the undercover officer. The meeting took place at the same location in West Palm Beach, Florida. During the meeting, the defendant sold the undercover officer approximately 28.2 grams of cocaine. The meeting was audio and video recorded by DEA and the cocaine tested positive by the DEA Southeast laboratory.
>
> 4. On July 8, 2021, the defendant met with the undercover officer. The meeting occurred at the same location in West Palm Beach, Florida. During the meeting, the defendant distributed approximately 55.9 grams of cocaine to the undercover officer. The meeting was audio and video recorded by DEA and the cocaine tested positive by the DEA Southeast laboratory.

5.     The defendant was arrested by DEA on July 8, 2021 after meeting with the undercover officer. Inside the defendant's vehicle, law enforcement discovered approximately 195.8 grams of cocaine. The cocaine tested positive by the DEA Southeast laboratory.

6.     Law enforcement conducted surveillance of the defendant before, during and after each drug transaction. On March 11, 2021, June 22, 2021, and June 25, 2021, the defendant was observed traveling to and from his residence, located at 2676 Lakehaven Road, West Palm Beach, Florida. Law enforcement also observed the defendant travel from his residence on July 8, 2021, to meet the undercover officer.

7.     DEA obtained a search warrant for the defendant's residence at 2676 Lakehaven Road, West Palm Beach, Florida. The warrant was executed on July 8, 2021, after the defendant's arrest. During the search warrant, DEA seized approximately 187.9 grams of cocaine, $895,000 in United States currency, a large quantity of plastic bags, a digital scale, a mallet with cocaine residue, and two handguns. Specifically, law enforcement found the cocaine in three plastic bags under a bathroom sink in the master bedroom. The mallet was in the same area along with other materials that were consistent with the distribution of cocaine, including a digital scale and large kitchen knife. The cocaine and residue on the digital scale tested positive by the DEA Southeast laboratory.

8.     Directly adjacent to the bathroom, and within the master bedroom, was a loaded .45 caliber Kimber handgun. The Kimber firearm was found in the top drawer of a nightstand on the right side of the bed. The nightstand was within feet of the bathroom sink and cocaine. The nightstand also contained men's underwear. The serial number of the Kimber .45 caliber handgun was KU86301. DEA also seized numerous rounds of .45 caliber ammunition.

9.     In the top drawer of a second nightstand, on the opposite side of the bed, was a loaded Glock, Model 48, 9-millimeter handgun. The Glock handgun was found among ladies' undergarments and along with identification for the defendant's partner. The serial number of the Glock handgun was BKYU981. DEA also seized numerous rounds of 9-millimeter ammunition.

10.    During the search, DEA found and seized two different stashes of United States currency. The first amount of money was found inside a suitcase in the master bedroom closet. The suitcase was located on an upper shelf and contained $870,000. The money was comprised of $100

8

  bills, banded into 87 groups of $10,000. The second stash of money was found inside a dresser drawer and totaled $25,000.

  11. The total amount of cocaine involved in the offense was 551.88 grams.

  12. All events occurring in the Southern District of Florida.

CR. ECF No. 42. During the plea colloquy, the Government proffered additional facts, including Mr. Ramirez-Alvarado's post-*Miranda* statement that (1) he and his wife had the firearms for protection, and (2) he found the money while walking on the beach. ECF No. 6 at 4-5.

Mr. Ramirez-Alvarado admitted that all of these facts could be proven beyond a reasonable doubt. ECF No. 6-1 at 23-27.

## PLEA COLLOQUY

Using a Spanish interpreter, the Court conducted a thorough plea colloquy with Mr. Ramirez-Alvarado. Mr. Ramirez-Alvarado swore under oath:

- He had fully discussed the charges and the case in general with his attorney. ECF No. 6-1 at 5.

- He had read and discussed the plea agreement with his attorney before signing it. *Id.* at 6.

- He understood all the terms of the plea agreement and had no questions about them. *Id.* at 7, 9.

- He was pleading guilty because he was, in fact, guilty. *Id.* at 10.

- He understood the essential elements of the offenses to which he was pleading guilty. *Id.* at 20-21.

9

- He understood that by pleading guilty he was giving up any defenses to the charges. *Id.* at 21.
- He had reviewed the written factual proffer with counsel and understood its contents. *Id.* at 22-23.

The Court found that the factual proffer was sufficient to establish the crimes charged in the Indictment. *Id.* at 27. The Court also found that Mr. Ramirez-Alvarado's plea was a knowing and voluntary plea. *Id.* at 28.

## DISCUSSION

*Ground One*

Mr. Ramirez-Alvarado phrases Ground One as, "Petitioner seeks review of conviction for Possession of a Firearm in furtherance of a Drug Trafficking offense as it is contrary to law." ECF No. 1-1 ¶12. What Mr. Ramirez-Alvarado is actually arguing is that there was insufficient evidence to support a conviction. That kind of non-jurisdictional, sufficiency-of-the-evidence defense is waived by a guilty plea. *See, e.g., United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir.1998). During the plea colloquy Mr. Ramirez-Alvarado said he understood that his plea to Count Four waived any defenses. Alternatively, Ground One is procedurally defaulted because it was not raised on direct appeal.

*Ground Two*

Ground Two says that trial counsel was constitutionally ineffective for recommending that Mr. Ramirez-Alvarado plead guilty. That claim can be raised, here, but it fails on the merits.

10

Mr. Ramirez-Alvarado argues that the following facts precluded a conviction on Count Five, so trial counsel was constitutionally ineffective for recommending a plea.

> The Petitioner was arrested about a half-mile from his home. He was arrested by several federal agents. During the arrest he was searched. No firearms were located on his person, near his person, or in the car which he drove to the scene of the location where the federal agents set up the buy-sale of two ounces of cocaine. (Count 4 of the indictment). After the arrest and during the search of his home there were two firearms located in two different nightstands within the bedroom of his home. In a bathroom, which was an open area adjacent to the bedroom, the federal agents recovered cocaine. . . At no time was the Petitioner near the firearm nor the drugs seized at his house.

ECF No. 3 at 2.

A competent trial counsel reasonably could have concluded that a jury would find the Government's evidence sufficient to prove Count Five beyond a reasonable doubt. In his post-arrest statement, Mr. Ramirez-Alvarado admitted to knowledge and constructive possession of the firearms. Although Mr. Ramirez-Alvarado was not home when the drugs and guns were seized, there was compelling circumstantial evidence that he was dealing drugs from the residence — drugs and drug paraphernalia were found in the master bedroom suite along with $895,000 in U.S. currency. Particularly given Mr. Ramirez-Alvarado's statement that he possessed the firearms for self-protection, a reasonable jury easily could have concluded that the firearms were possessed to protect his drug business and its ample proceeds.

Mr. Ramirez-Alvarado has not met his burden of showing that trial counsel was constitutionally deficient by recommending he plead guilty.

11

*Ground Three*

Ground Three alleges trial counsel was ineffective for advising Mr. Ramirez-Alvarado to plead guilty even though the Indictment failed to adequately allege crimes and Mr. Ramirez-Alvarado had viable defenses to Count Five.

Mr. Ramirez-Alvarado's argument that the Indictment was defective on its face is meritless, so trial counsel's failure to pursue this baseless argument was not deficient; alternatively, Mr. Ramirez-Alvarado has not shown prejudice from the allegedly deficient performance. He argues Count Five is defective because it failed to apprise him of the nature of the charges against him, failed to allege the specific firearm, and did not contain facts to supplement the elements of the crimes charged. ECF No. 3 at 7-8. He asserts, "But for counsel's errors, the Movant would not have pled guilty to Count Five of the indictment." *Id.* at 8.

Count Five as pled in the Indictment was constitutionally sufficient. "[I]t is axiomatic that an indictment is sufficient if it '(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.'" *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (citations omitted). Count Five conformed to this standard, so trial counsel was not constitutionally deficient for not challenging its sufficiency.

Turning to the prejudice prong of *Strickland,* Mr. Ramirez-Alvarez does not assert that *at the time he entered his plea* he did not understand the charges or the

evidence against him. To the contrary, prior to pleading, he had reviewed the charges and the evidence with counsel and had signed a detailed factual proffer that listed the elements of Count Five. The record evidence does not support a finding that he would not have pled guilty if the Indictment had been more specific about the charges and the evidence. So, even assuming there were non-jurisdictional defects in the Indictment, there was no prejudice.

The allegedly viable defense was that Mr. Ramirez-Alvarez's possession of the firearms was not "in furtherance of" the drug trafficking activity. ECF No. 3 at 5-7. This argument does not meet Mr. Ramirez-Alvarado's burden of showing deficient performance under the first *Strickland* prong. For the reasons discussed above, competent trial counsel could have concluded that this defense was not likely to succeed and that accepting the Government's plea offer was in Mr. Ramirez-Alvarado's best interest.

*Ground Four*

Ground Four alleges trial counsel was ineffective because he failed to ensure that the Court complied with Rule 11's requirements that the Defendant understand the nature of the charges and that there was a factual basis for the plea. More specifically, Mr. Ramirez-Alvarado appears to complain that trial counsel should have objected to the Court accepting the plea and proceeding to sentencing. This argument fails.

First, any substantive challenge to the sufficiency of the plea colloquy is procedurally defaulted because it was not raised on direct appeal.

Second, trial counsel was not constitutionally deficient for not objecting to the Court's finding that Mr. Ramirez-Alvarado's plea was knowing and voluntary. As part of the plea colloquy, the Court reviewed the charges with Mr. Ramirez-Alvarado, who said he understood the charges and the elements the Government would have to prove at trial. The Court also confirmed that Mr. Ramirez-Alvarado had reviewed the discovery and discussed the case fully with trial counsel. The Court had Mr. Ramirez-Alvarado confirm that he had reviewed the written factual proffer and that the Government could prove those facts. Finally, after the Government's oral factual proffer included facts beyond the written proffer, the Court had Mr. Ramirez-Alvarado admit that those facts were true. Based on these discussions, the Court found that Mr. Ramirez-Alvarado's plea was knowing and voluntary. Mr. Ramirez-Alvarado has not met his burden of showing that it was objectively unreasonable for trial counsel not to object to that finding.

Finally, to the extent Ground Four is restating the argument that trial counsel was constitutionally ineffective for not arguing that there were insufficient facts to support a plea, it is rejected for the same reasons as Ground Two.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his § 2255 motion has no absolute entitlement to appeal, and to do so, must obtain a certificate of appealability ("COA"). *See Jackson v. United States*, 875 F.3d 1089, 1090 (11th Cir. 2017) (per curiam) (citing 28 U.S.C. § 2253(c)(1)); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). A Certificate of Appealability should issue only if Petitioner makes "a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Where a district court has rejected a Movant's constitutional claims on the merits, a Movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack,* 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, a Movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Here, applying these principles, no certificate of appealability should issue. If Mr. Ramirez-Alvarado does not agree, he may bring this argument to the attention of the District Judge in objections.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Set Aside, Vacate, or Correct Sentence.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the

district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 24th day of October 2023.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE